| | |
|---|---|
| GINO INNOCENTI,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 3:18-cv-01650-H-LL<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>[Doc. No. 12]<br><br>**(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br>[Doc. No. 17] |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

On July 19, 2018, Plaintiff Gino Innocenti filed a complaint against Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, seeking judicial review of an administrative denial of disability benefits under the Social Security Act. (Doc. No. 1.) On October 1, 2018, the Acting Commissioner answered Plaintiff's complaint and lodged the administrative record. (Doc. Nos. 8, 9.) On November 8, 2018, Plaintiff filed a motion for summary judgment, asking the Court to reverse the Acting Commissioner's

final decision and remand for further administrative proceedings. (Doc. No. 12.) On March 25, 2019, the Acting Commissioner cross-moved for summary judgment, asking the Court to affirm the Acting Commissioner's final decision. (Doc. No. 17.) For the reasons below, the Court denies Plaintiff's motion for summary judgment, grants the Acting Commissioner's motion for summary judgment, and affirms the Acting Commissioner's final decision.

## BACKGROUND

On July 8, 2015, Plaintiff, who was 58 years old at the time and had previously worked as an electrical engineer, applied for disability insurance benefits, claiming a disability onset date of June 12, 2015. (Doc. No. 9, AR 53, 152–53.) The Social Security Administration ("SSA") initially denied Plaintiff's application for benefits on August 24, 2015 and denied reconsideration on October 14, 2015. (AR 76–87.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 10, 2017. (AR 29–52.) Plaintiff testified at the hearing and was represented by counsel. (Id.) The ALJ also heard testimony from Susan Creighten-Clavel, an independent vocational expert. (Id.)

On January 26, 2018, the ALJ issued a written decision, analyzing Plaintiff's claim and determining that Plaintiff had not met his burden of proof. (AR 18–25.) SSA regulations require ALJs to use the following five-step inquiry when determining whether an applicant qualifies for disability benefits: (1) has the claimant been gainfully employed since the time of the disability onset date; (2) "is the claimant's impairment severe"; (3) "does the impairment 'meet or equal' one of a list of specific impairments described in the regulations," and if not, what is the claimant's residual functional capacity ("RFC")[1]; (4) is the claimant capable of performing past relevant work; and (5) "is the claimant able to do any other work." Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); see 20

---

[1] SSA regulations define residual functional capacity as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

C.F.R. § 404.1520(a)(4)(i)–(v).

Here, the ALJ determined at step one that Plaintiff had not been gainfully employed since the disability onset date of June 12, 2015. (AR 20.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the spine and bursitis of the left shoulder. (Id.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that amounted to one of the SSA regulations' enumerated impairments. (AR 20–21.) The ALJ then determined that Plaintiff had a RFC to perform "light work," as defined in 20 C.F.R. 404.1567(b), "except [that he] is limited to lifting 20 pounds occasionally, and ten pound frequently; sitting for six hours in an eight hour workday; standing and/or walking for six hours in an eight hour workday; occasionally stooping, kneeling, crouching, crawling, and climbing ramps or stair; no climbing of ladders, ropes, or scaffolds, occasional overhead reaching with the left upper extremity; and [he] should avoid concentrated exposure to extreme cold temperatures, wetness, unprotected heights, and vibration." (AR 21–24.) At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as an electrical design engineer based on the vocational expert's testimony and information from the Dictionary of Occupational Titles. (AR 24–25.)

Consequently, the ALJ determined that Plaintiff was not disabled from June 11, 2015, the alleged onset date, through January 26, 2018, the date of the ALJ's decision. (AR 25.) On May 24, 2018, the Social Security Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (AR 1–6.)

## **LEGAL STANDARDS**

### I. The Social Security Administration's Sequential Five-Step Inquiry

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(i)–(v). To qualify for disability benefits, a claimant must establish that he or she is "disabled," meaning that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

Step one in the sequential evaluation considers a claimant's "work activity, if any." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity." Id. §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has a medically severe impairment or combination of impairments. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The so-called "severity regulation" dictates the ALJ's step-two analysis. Bowen v. Yuckert, 482 U.S. 137, 140–41 (1987). Specifically, an ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment is severe, however, the evaluation proceeds to step three. At step three, the ALJ determines whether the impairment is equivalent to one of several enumerated impairments that the SSA deems so severe as to preclude substantial gainful activity. Id. §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant is disabled if the impairment meets or equals one of the enumerated impairments. Id.

If the ALJ concludes that a claimant does not suffer from one of the SSA regulations' enumerated severe impairments, the ALJ must determine the claimant's RFC before proceeding to step four of the inquiry. Id. §§ 404.1520(e), 416.920(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. See id. §§ 404.1545(a)(1), 416.945(a)(1). The RFC analysis considers whether the claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." Id. In establishing a claimant's RFC, the

4

ALJ must assess relevant medical and other evidence, as well as consider all of the claimant's impairments, including impairments categorized as non-severe. Id. §§ 404.1545(a)(3)–(4), (e), 416.945(a)(3)–(4), (e).

Given the claimant's RFC, the ALJ determines at step four whether the claimant has the RFC to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. Id. Conversely, if the claimant does not have the RFC to perform his or her past relevant work, or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's inquiry, the ALJ must determine whether the claimant is able to do *any* other work in light of his or her RFC, age, education, and work experience. Id. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1). If the claimant is able to do other work, the claimant is not disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). However, if the claimant is not able to do other work and meets the duration requirement of twelve months, the claimant is disabled. Id. Although the claimant generally continues to have the burden of proving disability at step five, a limited burden shifts to the SSA, such that the SSA must present evidence demonstrating that other jobs the claimant can perform—allowing for RFC, age, education, and work experience—exist in significant numbers in the national economy. Tackett, 190 F.3d at 1099.

## II. Standard of Review

Unsuccessful applicants for social security disability benefits may seek judicial review of a Commissioner's final decision in a federal district court. See 42 U.S.C. § 405(g). "As with other agency decisions, federal court review of social security determinations is limited." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). The court will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews, 53 F.3d at 1039). The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's determination. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (quoting Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison, 759 F.3d at 1010 (quoting Andrews, 53 F.3d at 1039). "The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotation marks and bracket omitted) (quoting Matthews v. Shalala, 10 F.3d 678 (9th Cir.1993)).

Even if the ALJ commits legal error, a reviewing court will uphold the decision where that error is harmless—that is, where the error is "inconsequential to the ultimate nondisability determination." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. at 1111 (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

## DISCUSSION

Plaintiff argues that the ALJ erred on step four because it concluded that Plaintiff could perform occasional overhead reaching with the left upper extremity despite Dr. Thomas Sabourin opining that Plaintiff could not work with his left arm above shoulder level on the left, and that such an error was harmful. (Doc. No. 12-1.) The Acting Commissioner argues that the ALJ appropriately weighed the medical evidence in the record and that the ALJ's decision is supported by substantial evidence. (Doc. No. 17-1.) The Acting Commissioner further argues that even assuming the ALJ erred, any such error

would be harmless and therefore, non-reversible. (Id.) After thorough review of the administrative record and the parties' arguments, the Court concludes that the ALJ did not err in its decision.

Here, Plaintiff's primary complaint is of severe episodic low back pain. (See AR 22, 53.) He also has psoriatic arthritis, which the medical evidence indicates has been well controlled with medication. (AR 22–23.) Although not his primary complaint, Plaintiff also has bursitis of the left shoulder. (AR 20.) The ALJ reviewed examinations of Plaintiff by two doctors, Dr. Cheryl Wright and Dr. Sabourin. (AR 23–24.) Dr. Sabourin conducted a consultative orthopedic examination of Plaintiff on May 22, 2017. (AR 277–82.) Following the examination, Dr. Sabourin opined:

> I feel he could lift or carry 20 pounds occasionally and 10 pounds frequently. He could stand and walk up to 6 hours of an eight-hour workday. He could sit for 6 hours of an eight-hour workday. Posture limitations, he could climb, stoop, kneel, and crouch occasionally limited by his back disease. He has manipulative limitations. He cannot work with the left arm above shoulder level on the left. He has no gross or fine manipulation limitations as his psoriatic arthritis is well controlled. Based on this evaluation, I could not find enough wrong with this individual that he would need a cane to ambulate.

(AR 282.)

In its decision, the ALJ stated with regards to Dr. Sabourin's opinion:

> Some weight is given to this opinion, as the degree of limitation is consistent with the objective medical evidence in the record, which consists mostly of the claimant's complaints of pain and of the imaging studies demonstrating the claimant's degenerative disc disease in the lumbar spine. Less weight is given to Dr. Sabourin's opinion that the claimant could occasionally climb, as his degenerative disc disease is likely to preclude any climbing of ladders, ropes, or scaffolds. Additionally, given the nature of the claimant's ongoing joint and back pain, environmental limitations, such as avoiding concentrated exposure to wetness, unprotected heights, vibration, and extreme cold temperatures, are appropriate.

(AR 24.) Upon review the entire medical record, the ALJ concluded that Plaintiff had "the residual functional capacity to perform light work except that he "is limited to lifting 20 pounds occasionally, and ten pound frequently; sitting for six hours in an eight hour

7

3:18-cv-01650-H-LL

workday; standing and/or walking for six hours in an eight hour workday; occasionally stooping, kneeling, crouching, crawling, and climbing ramps or stair; no climbing of ladders, ropes, or scaffolds, occasional overhead reaching with the left upper extremity; and [he] should avoid concentrated exposure to extreme cold temperatures, wetness, unprotected heights, and vibration." (AR 21.) The ALJ concluded with these limitations in mind and based on the testimony of the vocational expert and information in the Dictionary of Occupational Titles, Plaintiff remains able to perform his past work as an electrical design engineer. (AR 24–25.) Plaintiff argues that the ALJ erred by concluding that he could perform "occasional" overhead reaching on the left rather than no overhead reaching on the left, as opined by Dr. Sabourin. (Doc. No. 12-1.)

An ALJ must consider all evidence, including medical opinions, in determining whether the claimant is disabled. See 20 C.F.R. § 416.920(b). Generally, the ALJ should give more weight to a treating doctor's opinion than to the opinion of a doctor who did not treat the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Similarly, the ALJ should give more weight to an examining doctor's opinion than to the opinion of a doctor who did not examine the claimant. Id. The ALJ must assign weight to medical opinions according to several factors, including supportability of the opinion and consistency with the record as a whole. See 20 C.F.R. § 416.927(c). When there is a material conflict in the evidence, such as the presence of contradictory medical evidence, only the ALJ can resolve it. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the Court concludes that the ALJ appropriately weighed Dr. Sabourin's opinion in light of the medical evidence in the record, and supported its decision with substantial evidence. In his claim for disability, Plaintiff alleges that his impairments are degenerative disc disease and arthritis. (AR 53.) Plaintiff's allegation did not involve his shoulder, and the opinion by Plaintiff's treating doctor, Dr. Wright, does not involve his

8

3:18-cv-01650-H-LL

workday; standing and/or walking for six hours in an eight hour workday; occasionally stooping, kneeling, crouching, crawling, and climbing ramps or stair; no climbing of ladders, ropes, or scaffolds, occasional overhead reaching with the left upper extremity; and [he] should avoid concentrated exposure to extreme cold temperatures, wetness, unprotected heights, and vibration." (AR 21.) The ALJ concluded with these limitations in mind and based on the testimony of the vocational expert and information in the Dictionary of Occupational Titles, Plaintiff remains able to perform his past work as an electrical design engineer. (AR 24–25.) Plaintiff argues that the ALJ erred by concluding that he could perform "occasional" overhead reaching on the left rather than no overhead reaching on the left, as opined by Dr. Sabourin. (Doc. No. 12-1.)

An ALJ must consider all evidence, including medical opinions, in determining whether the claimant is disabled. See 20 C.F.R. § 416.920(b). Generally, the ALJ should give more weight to a treating doctor's opinion than to the opinion of a doctor who did not treat the claimant. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Similarly, the ALJ should give more weight to an examining doctor's opinion than to the opinion of a doctor who did not examine the claimant. Id. The ALJ must assign weight to medical opinions according to several factors, including supportability of the opinion and consistency with the record as a whole. See 20 C.F.R. § 416.927(c). When there is a material conflict in the evidence, such as the presence of contradictory medical evidence, only the ALJ can resolve it. See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the Court concludes that the ALJ appropriately weighed Dr. Sabourin's opinion in light of the medical evidence in the record, and supported its decision with substantial evidence. In his claim for disability, Plaintiff alleges that his impairments are degenerative disc disease and arthritis. (AR 53.) Plaintiff's allegation did not involve his shoulder, and the opinion by Plaintiff's treating doctor, Dr. Wright, does not involve his

shoulder. (See AR 53–61, 230–60.) In its decision, the ALJ states that "[t]reatment records indicate the claimant has complained of low pack pain fairly consistently since the alleged onset date, but include little to no evidence of issues in other joints." (Id.) The ALJ emphasized that Plaintiff's treating rheumatologist provided a sole diagnosis of "chronic low back pain[.]" (Id.; see AR 230–60.) The ALJ concluded that "while there is objective medical evidence of impairment, specifically relating to chronic low back pain, the evidence is inconsistent with the degree of limitation alleged by the claimant." (AR 23.)

In reviewing Dr. Sabourin's findings, the ALJ provided sufficient reasoning for concluding that Dr. Sabourin's opinion should be given some weight. (AR 24.) Dr. Sabourin's opinion that Plaintiff "cannot work with the left arm above shoulder level on the left" was not based on an actual diagnosis, but was merely inferred. (See AR 282.) Dr. Sabourin in his opinion states that Plaintiff has "probably adhesive capsulitis but perhaps degenerative arthritis in the left should joint and no x-rays are available." (Id.) Dr. Sabourin's examination of Plaintiff's shoulders showed that "[h]e had some pain at the extremes of motion. There was minimal tenderness. There was no redness or swelling and no crepitus. Strength was satisfactory." (AR 280.) Thus, the ALJ accorded proper weight to Dr. Sabourin's opinion that Plaintiff could perform no overhead reaching on his left side because that opinion was "brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

Ultimately, "[u]pon careful consideration of [Plaintiff's] allegations; the medical findings and opinions; and the record as a whole," the ALJ concluded that Plaintiff remained able to perform occasional overhead reaching on his left side. (AR 24.) Consistent with SSA regulations, the ALJ considered the supportability of Dr. Sabourin's opinion and consistency with the record as a whole, and thusly accorded appropriate weight to Dr. Sabourin's opinion. See 20 C.F.R. § 416.927(c). Accordingly, the ALJ properly weighed the medical evidence and provided substantial evidence for its decision that Plaintiff was not disabled within the meaning of the Act because given his residual functional capacity, he can continue to perform his past work as an electrical design

engineer. Thus, the Court affirms the ALJ's decision because it is supported by substantial evidence and was not the result of any legal error. See Treichler, 775 F.3d at 1098.

## **CONCLUSION**

For the foregoing reasons, the Court denies Plaintiff's motion for summary judgment, grants the Acting Commissioner's motion for summary judgment, and affirms the Acting Commissioner's final decision. The Court directs the Clerk to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

DATED: June 5, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT